IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CRAIG BARNETTE,<br><br>          Petitioner,<br><br>     v.<br><br>JEFFREY BEARD, Secretary,<br>California Department of<br>Corrections and Rehabilitation,<br><br>          Respondent. | Case No.: C 11-00035 CW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY |

Petitioner Michael Craig Barnette, a California prisoner[1] proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the validity of his state conviction, asserting four claims: (1) the trial court's denial of his motion to substitute counsel violated his Sixth Amendment right to counsel; (2) the trial court's denial of his motion to retain new counsel violated his Sixth Amendment right to counsel; (3) the trial court erred by failing to instruct on a lesser included offense; and (4) the trial court erred in

---

[1] At the time Petitioner filed the federal petition, he was in the constructive custody of the California Department of Corrections and Rehabilitation and in physical custody at the Tallahatchie County Correctional Facility in Tutwiler, Mississippi.

proceeding with the trial in Petitioner's absence. Respondent filed an answer and a memorandum of points and authorities in support thereof. Petitioner has not filed a traverse. For the reasons discussed below, the Court DENIES the petition as to all claims and denies a certificate of appealability.

BACKGROUND

I. Procedural History

In October 2007, an Alameda County jury found Petitioner guilty of two counts of assault with a deadly weapon.[2] Court Transcript (CT) at 967-68. Petitioner was sentenced to six years in state prison. CT 316-17; 328-29.

Petitioner appealed and, on December 28, 2009, his conviction was affirmed in an unpublished opinion by the California Court of Appeal. Ex. 8. On March 18, 2010, the California Supreme Court summarily denied review. Exs. 9 and 10. Petitioner timely filed the instant federal petition.

II. Statement of Facts

The California Court of Appeal summarized the facts of this case as follows:

> The [trial] was scheduled [to begin] on October 1, 2007. On that day, the prosecution's request for a weeklong continuance was denied. The next afternoon, defendant informed the court that he was dissatisfied with his appointed attorney, James Ramsaur. The court construed the complaint as a request for substitute appointed counsel and held a closed hearing pursuant to Marsden, 2 Cal. 3d 118.
>
> . . .
>
> The trial court denied defendant's Marsden motion, finding there had been no breakdown in the relationship between defendant and Ramsaur that would make it impossible for Ramsaur to represent defendant effectively. When he learned of the court's ruling, defendant asked the court, "So how can

---

[2] Petitioner was tried with co-defendant Andrea Schiefer.

2

I get a new lawyer?" The court responded defendant was "not getting one," even if he retained counsel himself. As the court said, "on the doorstep of us picking a jury tomorrow morning, there won't be any new lawyer."

Although defendant attended the first two days of jury selection, October 3 and 4, 2007, he failed to appear on the next day of trial, October 9. Defendant's bail was forfeited, a bench warrant was issued, and the trial continued in his absence. He did not return for the duration of the trial.

Kenneth Johnson, Schiefer's husband at the time of the incidents, was the primary prosecution witness. Johnson testified that in early 2007, he was living in Berkeley with Schiefer. Schiefer stayed away from the house for two nights and returned early in the morning of January 15 with defendant. Schiefer asked Johnson whether defendant could stay in their home for a brief period. Although Johnson initially acceded to her request, he and defendant soon got into an argument, and Johnson asked defendant to leave. After some resistance, defendant walked out the door. Over Johnson's objections, Schiefer packed her things and began to leave as well. When she opened the door to leave, defendant was standing outside the door. When he saw Johnson standing alongside Schiefer in the door, defendant "took his skateboard and hit me in the head with it, brought it down on my head. He had it gripped in both hands. . . . He was hitting me on the head . . . with the edge of the skateboard like as if you would swing an axe. . . . And he was using the narrow edge, and it was striking me on top of the head and the temples." The four blows caused lacerations and ruptured blood vessels in Johnson's eye. Johnson returned inside the house, and Schiefer and defendant left. The next day, defendant committed a similar but more savage skateboard assault that seriously injured Johnson. FN3

> FN3  Because the details of this assault are not material to the issues raised by defendant on appeal, we do not include them. The events are described in our decision affirming Schiefer's convictions. (People v. Schiefer, A120297.)

Schiefer, the only other witness to the January 15 assault, also testified. According to Schiefer, she returned home with defendant that morning. Johnson and defendant soon began to argue, and Johnson insisted to Schiefer that she "throw [defendant] out." When Schiefer refused, Johnson lunged to hit defendant, and defendant fought back. Their fistfight carried them through a door, out of Schiefer's sight. Then defendant ran out the door, pursued by Johnson, who was holding a foot-long knife that belonged to Schiefer. After the two ran into a small dining room, Johnson raised the knife above his head and stabbed at defendant. Defendant, who had grabbed his skateboard, used it to block the knife. As Johnson pulled the knife from the skateboard,

3

> defendant ran for the door.  Schiefer wrestled unsuccessfully with Johnson for the knife before grabbing some possessions to leave with defendant.  As she tried to leave, Johnson blocked her way out, holding a screen door closed.  They struggled over the door, and defendant, standing outside, struck Johnson's hands with the skateboard to cause him to release the door.  Schiefer and defendant then left together.
>
> Defendant was convicted in absentia of both counts, and the jury found true the allegation that defendant personally inflicted great bodily injury.  After being detained on the warrant, defendant was represented by new counsel.  The trial court sentenced him to six years in state prison, imposing a three-year term on one count of assault with a deadly weapon, enhanced by a consecutive three-year term for infliction of great bodily injury.  The court imposed a three-year concurrent sentence on the other assault conviction.

Ex. 8 at 1-4 (footnote in original).

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court

4

has on a set of materially indistinguishable facts." Id. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.  Under AEDPA, the writ may be granted only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled in part on other grounds by Lockyer v. Andrade, 538 U.S. 63 (2003).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

5

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  In the present case, the highest court to issue a reasoned decision on Petitioner's claims is the California Court of Appeal.

                          DISCUSSION

I. Denial of Motion to Substitute Counsel

Petitioner claims that the trial court violated his Sixth Amendment right to counsel when it denied his motion to substitute counsel under People v. Marsden, 2 Cal. 3d 118 (1970).[3]

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas proceedings. Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc).  When a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. Id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990); Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).  The inquiry need only be as comprehensive as the

---

[3] People v. Marsden, 2 Cal. 3d 118 (1970), requires the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing.  This California rule substantially parallels the one prescribed by the Ninth Circuit in Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).  See Chavez v. Pulley, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

6

circumstances reasonably would permit, however.  King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary).

The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  Schell, 218 F.3d at 1024-25.  That is, the habeas court considers whether the trial court's denial of the motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  Id. at 1026.  A conflict of the petitioner's own making or one that arose over decisions that are committed to the judgment of the attorney and not the client does not deprive the petitioner of his right to counsel.  Id.  Counsel is entitled to make tactical decisions, "in the face of his client's incomprehension or even explicit disapproval."  Id. at 1026 n.8 (citations omitted).  Furthermore, the right to counsel does not include a right to counsel with whom the defendant has a meaningful attorney-client relationship.  Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).

The California Court of Appeal rejected this claim under California law, as follows:

> We find no abuse of discretion in the trial court's denial of defendant's Marsden motion.  Defendant was dissatisfied with Ramsaur because, purportedly, he did not express his opinion regarding the strength of defendant's case, did not communicate with defendant, had done little to prepare the case, in particular having failed to read the preliminary hearing transcript on the day prior to trial, and refused to call a purportedly favorable witness.  Ramsaur satisfactorily answered these charges.  He explained it was not his practice

7

> to opine on the likelihood of a client's conviction and contended he had attempted to stay in contact with defendant but was frustrated by defendant's transient lifestyle. He told the court he had not only read the preliminary hearing transcript, but also had participated in the hearing. Finally, he explained he decided not to call the witness because he judged the witness's testimony not credible and possibly fabricated. Accepting these explanations, as the trial court was entitled to do, there was no reason to believe either that Ramsaur's representation was deficient or that he and defendant had a conflict that would make effective representation difficult.
>
> Defendant contends Ramsaur's performance fell short because defendant had a right to see a report of the interview Ramsaur's investigator did with the witness and to learn from Ramsaur why he did not intend to call the witness. The only authority defendant cites for his contention that he had a right to the report and Ramsaur's explanation is Michigan v. Harvey (1990) 494 U.S. 344, which holds only that a defendant has the general right to consult counsel. (Id. at 348.) That, of course, is a far cry from holding that a defendant has a right to view the work product generated by his counsel and to receive an explanation for all tactical decisions. It is commonly held that "[a] defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense. [Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an "'irreconcilable conflict.'" ". . . [C]ounsel is 'captain of the ship' and can make all but a few fundamental decisions for the defendant." (People v. Jackson, 45 Cal. 4th at 688; see similarly People v. Alfaro (2007) 41 Cal. 4th 1277, 1302.) The type of disclosures and discussion defendant urges are not constitutionally required, and an attorney may have practical or even ethical reasons for failing to disclose or consult, as Ramsaur believed here. In any event, Ramsaur violated no right of defendant, and his conduct constituted neither inadequate assistance nor an irreconcilable conflict.

Ex. 8 at 5-7.

The state appellate court's denial of this claim was not objectively unreasonable. The trial court held a hearing at which Petitioner was able to voice each of his concerns about his alleged irreconcilable conflicts with defense counsel, meeting the requirements for a hearing set forth in Hudson, 686 F.2d at 829. Defense counsel's responses show that he had sound, strategic reasons for acting as he did. For instance, Petitioner faults

8

counsel for not presenting a witness who would testify favorably on behalf of Petitioner. However, counsel explained that the discrepancy between the testimony of this witness and that of the other witnesses was so great that counsel concluded the witness's testimony was not credible. Thus, counsel's decision not to call the witness was a reasoned, tactical decision that does not provide a basis for finding an irreconcilable conflict or deficient performance. See Schell, 218 F.3d at 1026 and n.8 (counsel entitled to make tactical decisions even if his client disapproves of them).

Petitioner claims that counsel's refusal to share the witness's statement also shows an irreconcilable conflict. However, because counsel had determined not to use the witness's testimony, his refusal to share it with Petitioner was not unreasonable. As noted by the Court of Appeal, a defendant does not have the right to view the work product of his counsel or to present a defense of his own choosing. See id. at 1026 (Sixth Amendment violation cannot be based on conflict of the petitioner's own making or from decisions committed to judgment of the attorney).

Petitioner also argues that counsel did not return phone calls or reply to multiple mailed written requests and queries. However, at the hearing, counsel explained that he had attempted to be in contact with Petitioner, but was unable to because of Petitioner's transient lifestyle.

Next, Petitioner points out that, although counsel stated that he had no opinion about the strength of Petitioner's case, he told Petitioner to take the plea deal or "go away in handcuffs." Based on these statements, Petitioner concludes that counsel was

not being truthful when he said he had no opinion about the strength of his case. Assuming that counsel made these two statements, they are reconcilable. As counsel explained to the trial court at the <u>Marsden</u> hearing, he did not respond to Petitioner's question regarding the strength of his case because it was his practice not to speculate about whether his client would be convicted. However, when offered a plea deal by the prosecutor, counsel may have felt a responsibility to advise Petitioner whether it was in his best interest to accept it.

In summary, under the above-cited federal authority, the grounds which Petitioner provides are insufficient to form the basis of an irreconcilable conflict and, thus, did not result in ineffective assistance of counsel. The state court's rejection of this claim was not objectively unreasonable.

II. Denial of Request to Retain Counsel

Petitioner claims that the trial court committed error by denying his request to retain counsel of his choosing.

The California Court of Appeal summarized the background to this claim, as follows:

> Defendant contends the trial court denied him counsel of his choosing, based on the following colloquy, which occurred after the trial court denied defendant's <u>Marsden</u> motion:
>
> "THE DEFENDANT: So how can I get a new lawyer?
>
> "THE COURT: You're not getting one.
>
> "THE DEFENDANT: If I hire one?
>
> "THE COURT: No. You are not hiring anybody. He is your lawyer for this case. He is your lawyer for this case. I am denying it. I have found that his representation has been effective and that he will continue to effectively represent you. So on the doorstep of us picking a jury tomorrow morning, there won't be any new lawyer. He is going to be your lawyer for this trial."

10

Ex. 8 at 8.

The California Court of Appeal then rejected this claim, as follows:

> While it is generally true that a defendant has the right to counsel of his or her choosing, that right is not absolute. Most notably, an indigent defendant relying on court-appointed counsel has no say in the selection of counsel. Absent circumstances satisfying the Marsden requirements, an indigent defendant must accept the counsel assigned. (People v. Ortiz (1990) 51 Cal. 3d 975, 984.) Even a defendant who can afford to retain counsel may be refused a request to change counsel if the change would be unduly disruptive. While "a defendant . . . who seeks in a timely manner to discharge retained counsel, ordinarily should be permitted to do so," such discharge may be denied if "it will result in 'significant prejudice' to the defendant or in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" (Id. at 981, 982.) . . .
>
> It is not clear which standard, the Marsden standard for substitution of appointed counsel or the more permissive standard for discharge of retained counsel, should be applied under these circumstances. Defendant, who relied on appointed counsel, was presumptively indigent, and the Marsden motion was undertaken on the assumption he was seeking to substitute one appointed counsel for another. When he contradicted this presumption by asking the court whether he could hire an attorney himself, he gave no indication that his situation had changed in a manner that would provide him the financial means to hire counsel. In the absence of a demonstration that defendant had the ability to retain counsel, and not just the desire, the trial court was entitled to view his request merely as a reiteration of his Marsden motion. As noted, that motion was properly denied. Further, there could not have been any prejudice in the trial court's denial of retained counsel if, in fact, defendant lacked the means to retain counsel.
>
> We need not resolve the issue of which standard properly applies, however, because even under the standard for denial of a change of retained counsel, we would affirm. As noted, a request to discharge retained counsel may be denied if it would result in a "'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" (People v. Ortiz, 51 Cal. 3d at 982.) As a result, trial courts have generally been held to have the

> discretion to deny a motion to discharge retained counsel when the motion is made on the eve of trial and on grounds that could have been raised earlier, as here. . . .
>
> Defendant relies on People v. Lara (2001) 86 Cal. App. 4th 139, in which the trial court was held to have erroneously applied the Marsden standard to a defendant's request to discharge his retained counsel. Because the trial court did not address the discretionary factors that are properly applied to a motion to discharge retained counsel, discussed above, the Court of Appeal reversed. (Lara, at 164, 166.) Even assuming defendant's situation should be evaluated under the standard applicable to a request to discharge retained counsel, Lara does not require reversal. Notably, although the Lara defendant's motion to discharge was made on the eve of trial, the court noted that the defendant could not have made the motion earlier because he was unaware earlier of the factors that led to the request to discharge. (Id. 162-163.) In contrast, defendant's stated grounds for dissatisfaction had been present for some time. Further, the Lara court did not hold that denial under the circumstances presented there would constitute an abuse of discretion; it merely remanded for consideration under the proper standard. Here, the trial court expressly noted that it was denying defendant's request to find retained counsel because it was untimely. As noted above, we find this to have been a proper exercise of the trial court's discretion.

Ex. 8 at 8-10.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-35 (1989). The erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error. United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006). Thus, a violation of the Sixth Amendment right to

counsel of choice is not subject to harmless-error analysis.  Id. at 152.

However, the right to counsel of choice is "circumscribed in several important respects."  Wheat v. United States, 486 U.S. 153, 159 (1988).  There are four specific situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have a right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar.  Id.  In addition, the trial court requires "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." Gonzalez-Lopez, 548 U.S. at 152 (citation omitted).  As such, trial courts retain the discretion to "make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."  Id.

Of primary importance is whether the defendant has retained another attorney to take the place of the attorney he wishes to terminate, whether the identified new attorney is qualified to represent the defendant, and how much time the new attorney will need to prepare to represent the defendant.  Miller v. Blacketter, 525 F.3d 890, 896 (9th Cir. 2008) (denying habeas relief on claim that trial court refused thirty-day continuance to enable defendant to search for and retain new counsel with funds he had received from his father).

The state appellate court first considered this as a reiteration of Petitioner's claim of the denial of his Marsden motion.  At the trial level, Petitioner was presumptively indigent

13

because counsel had been appointed to represent him.  When Petitioner asked the trial court if he could retain private counsel, he did not inform the court that he had the necessary funds to do so.  As such, the California Court of Appeal reasonably concluded that Petitioner was renewing his Marsden motion to substitute another appointed counsel for his present appointed counsel.  As discussed above, the claim based on the denial of his Marsden motion was reasonably denied.  Therefore, the appellate court's denial of this claim as a reiteration of that claim also was reasonable.

The claim also fails when viewed as Petitioner's request to substitute his own retained counsel.  The request was made the day before the trial was set to begin and Petitioner had not informed the trial court that he was able to hire an attorney or that an attorney had been identified.  Even assuming that Petitioner was capable of hiring an attorney, permission to hire new counsel would have required an indefinite continuance of the trial date because counsel would first have to be identified and then given time to familiarize himself with Petitioner's case.  See Gonzalez-Lopez, 548 U.S. at 150 (trial court granted wide latitude to balance right to counsel of choice with needs of court calendar).  Given that the trial court had just held a hearing into the problems between Petitioner and his counsel and had determined that there were no irreconcilable conflicts between them, the trial court's denial of the request to retain new counsel on the day before trial and the appellate court's affirmation of this decision were not objectively unreasonable.  See Miller, 525 F.3d at 896 (denying request to retain new attorney where counsel had not been retained and it was unclear how long new counsel, once

14

hired, would need to prepare for trial, distinguishing other cases where request to substitute attorney was wrongfully denied because defendant had retained counsel who was ready, willing and able to represent defendant).

Accordingly, Petitioner is not entitled to habeas relief on this claim.

III. Failure to Instruct on Lesser Included Offense

Petitioner claims that the trial court erred by failing to instruct on the lesser included offense of simple assault in connection with the first count, which charged assault with a deadly weapon in connection with the January 15 attack at Johnson and Schiefer's home. Respondent indicates that this claim was not exhausted in state court. Petitioner, who has not filed a traverse, does not argue otherwise. This Court need not determine whether this claim is exhausted because, under 28 U.S.C. § 2254(b)(2), an unexhausted claim may be denied on the merits. See Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir. 2005) (unexhausted claim may be denied on merits when it is perfectly clear that applicant does not raise even a colorable federal claim). As discussed below, Petitioner does not raise a colorable federal claim.

No Supreme Court authority holds that a failure to instruct on a lesser included offense in a non-capital case constitutes a constitutional violation. Beck v. Alabama, 447 U.S. 625, 638 n.14 (1980); Keeble v. United States, 412 U.S. 205, 213 (1973) (Supreme Court has never held that due process requires jury to be instructed on lesser included offense). The Ninth Circuit has held that the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a

federal constitutional claim. <u>Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000); <u>Windham v. Merkle</u>, 163 F.3d 1092, 1105-06 (9th Cir. 1998). However, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." <u>Solis</u>, 219 F.3d at 929 (citing <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984)). To qualify for this exception, there must be substantial evidence supporting the instruction on the lesser included offense. <u>Solis</u>, 219 F.3d 929-30; <u>United States v. Boulware</u>, 558 F.3d 971, 974 (9th Cir. 2009) (defendant entitled to instruction on a theory of defense only if the theory is legally cognizable and there is evidence upon which jury could rationally find for defendant).

In addition to the reasons stated above, Petitioner's claim fails because the state appellate court's factual findings are presumed correct absent clear and convincing evidence to the contrary. See <u>Miller_El</u>, 537 U.S. at 340. The Court of Appeal explained that:

> Two witnesses, Johnson and Schiefer, testified with respect to the assault on January 15. Johnson described an unprovoked assault with a skateboard, wielded in a potentially lethal manner. Schiefer described no assault at all. In her account, defendant struck blows only in defending himself or Schiefer against Johnson. If, as apparently happened, the jury rejected Schiefer's testimony and concluded defendant did not act in self-defense, there was no testimony from which the jury could have concluded that only a simple assault, rather than assault with a deadly weapon, occurred. . . . [A]fter the jury rejected Schiefer's testimony, it could not reasonably have concluded that defendant assaulted Johnson in any way other than with a deadly weapon, given the nature of Johnson's testimony.
>
> Defendant argues the jury could have concluded he merely struck Johnson with the skateboard on his hands to cause him to release the door. This, too, would have been justifiable

16

> conduct, rather than the crime of assault, because defendant was attempting to come to the aid of another by resisting Johnson's forceful detention of Schiefer. . . . It therefore provided no basis for a conviction on simple assault.

Ex. 8 at 11-12.

Petitioner fails to provide clear and convincing evidence disputing the Court of Appeal's findings of fact. Therefore, they must be presumed correct.

Finally, even if the failure to instruct on the lesser-included offense was erroneous, Petitioner cannot demonstrate that the error had a substantial or injurious effect in determining the jury's verdict. See Brecht, 507 U.S. at 637; Messer v. Runnels, 329 Fed. App'x. 102, 104 (9th Cir. 2009) (unpublished memorandum disposition) (applying Brecht in non-capital case to claim that trial court failed to instruct on lesser-included offense); Ghent v. Woodford, 279 F.3d 1121, 1133-34 (9th Cir. 2002) (applying Brecht in capital case to claim that court failed to instruct on a lesser-included offense). Because the jury found all the elements to convict Petitioner of the greater offense of assault with a deadly weapon beyond a reasonable doubt, the failure to give instructions on the lesser-included offense did not have a substantial and injurious effect or influence in determining the jury's verdict.

Accordingly, Petitioner has not raised even a colorable due process claim. This claim is denied.

IV. Continuing Trial in Petitioner's Absence

Petitioner argues that the trial court erred, under California Penal Code section 1043, by proceeding with his trial in his absence after he failed to appear for trial following the first two days of jury selection. Section 1043 provides, in

relevant part, "The absence of the defendant in a felony case after the trial has commenced in his presence shall not prevent continuing the trial to, and including, the return of the verdict" where the prosecution is not punishable by death and the defendant is voluntarily absent.  Petitioner argues that, under section 1043, the trial does not "commence" until after the jury is sworn in and the trial court erred by determining that the trial "commenced" with the beginning of jury selection.

Because this claim challenges the state court's interpretation of state law, it is not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas relief is limited to violations of federal Constitution, laws or treaties); Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003) (federal courts bound by state court's interpretation of its own laws).

Therefore, this claim is denied.

V. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability in the ruling. Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate must indicate which issues satisfy this standard.  28 U.S.C.

§ 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court finds that reasonable jurists would not find its assessment of any claim debatable or wrong.  Therefore, a certificate of appealability is denied.

Petitioner may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

## CONCLUSION

Based on the foregoing, the petition for a writ of habeas corpus and a certificate of appealability are denied.  The Clerk of the Court shall enter a separate judgment and close the file.

IT IS SO ORDERED.

Dated: 3/14/2014

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE